UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PHYLLIS RENEE TYSON,

                                Plaintiff,

                -vs-

CAROLYN W. COLVIN, *Acting Commissioner of Social Security*,

                              Defendant.

DECISION AND ORDER

15-CV-6547-CJS

_____

**APPEARANCES**

| | |
|---|---|
| For the Plaintiff: | Kenneth R. Hiller, Esq.<br>Timothy Hiller, Esq.<br>Law Offices of Kenneth Hiller<br>6000 North Bailey Avenue, Suite 1A<br>Amherst, NY 14226<br>(716) 564-3288 |
| For the Defendant: | David L. Brown, Esq.<br>Special Assistant U.S. Attorney<br>Social Security Administration<br>Office of General Counsel<br>26 Federal Plaza, Room 3904<br>New York, NY 10278<br>(212) 264-3650 |
| | Kathryn L. Smith, A.U.S.A. (*oral argument*)<br>Office of the United States Attorney<br>for the Western District of New York<br>100 State Street, Fifth Floor<br>Rochester, New York 14614<br>(585) 263-6760 |

**INTRODUCTION**

    **Siragusa, J.** This is an action brought pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security

("Commissioner" or "Defendant"), which denied the application of Phyllis Renee Tyson ("Plaintiff") for Social Security Disability Insurance ("SSDI") and Supplemental Security Income benefits ("SSI"). Now before the Court is Plaintiff's motion for judgment on the pleadings, Mar. 29, 2016, ECF No. 10, and Defendant's cross-motion for judgment on the pleadings, May 19, 2016, ECF No. 13.

Following oral argument, the Court invited the parties to address the question of whether the treating source opinion by Ms. Gerig and Dr. Giovanni, R. 469–72, was supported by the record and entitled to deference under the treating physician rule. In particular, the Commissioner expressed concern that the some of the opinions reported on page 471 are not supported in the therapist's treatment notes. The Court's opinion is that if you accept the medical source statement as accurate, then the hypothetical question asked of the VE is not valid. The question then to be answered is as follows: Did the ALJ properly reject the medical source statement at page 470–71. In other words, if the ALJ finds that the "signs and symptoms" on the first page, R. 470, are not supported in the record, then could he reject the conclusions on the second page of the statement, R. 471?

Having considered the issues raised in the papers, and at oral argument, Defendant's cross-motion for judgment on the pleadings is denied and Plaintiff's motion for judgment on the pleadings is granted. The Commissioner's decision is reversed and remanded for a new hearing.

## BACKGROUND

Plaintiff filed a claim on September 8, 2011, for disability benefits and an application for SSI. In both applications, she alleged disability beginning on January 6, 2010. Her

claims were initially denied on January 25, 2012, and she requested a hearing. The hearing took place before an Administrative Law Judge ("ALJ") on October 2, 2013, via video conference (Plaintiff appeared in Rochester, New York with Howard Olinsky, Esq., and the ALJ presided from Falls Church, Virginia). R. 19.

On June 6, 2014, the ALJ determined that Plaintiff met the insured status of the Act through December 31, 2015, had not been engaged in substantial gainful activity since January 6, 2010, and had the following severe impairments: (1) mental impairments described as bipolar versus borderline personality disorder, bipolar, anxiety, situational depression and depression; (2) breathing dysfunction described as asthma, bronchitis, and reactive airway disease with episodes of upper respiratory infections; and (3) obesity. R. 21–22. The ALJ further determined that Plaintiff's impairments did not meet the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that she retained the residual functional capacity to perform light work with postural, environmental, and mental limitations. R. 23–25. Based on his assessment, along with testimony from a vocational expert, the ALJ determined that significant jobs existed in the national economy that Plaintiff could perform, such as hotel housekeeper, office mail clerk, or office helper. On July 22, 2015 the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Plaintiff filed her complaint in this Court on September 14, 2015, ECF No. 1.

## STANDARDS OF LAW

*I. Jurisdiction and Scope of Review*

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits, and this section has been made applicable to SSI cases by 42 U.S.C. § 1383(c)(3). Additionally, the section directs that when considering

such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 217, 59 S. Ct. 206, 83 L. Ed. 126 (1938). Section 405(g) thus limits the Court's scope of review to determining whether the Commissioner's findings were supported by substantial evidence. *See, Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Lynn v. Schweiker,* 565 F.Supp. 265, 267 (S.D.Tex. 1983) (citation omitted). The Plaintiff and the Commissioner each move for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639 (2d Cir. 1988).

A district court should order payment of SSI benefits in cases where the record contains persuasive proof of disability and remand for further evidence would serve no purpose. *See Carroll v. Secretary of Health and Human Serv.,* 705 F.2d 638, 644 (2d Cir.1981). The goal of this policy is "to shorten the often painfully slow process by which disability determinations are made." *Id.*

*The Treating Physician[1] Rule*

The Commissioner's regulation states in pertinent part as follows:

(c) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more

---

[1] A treating physician is a "physician, psychologist, or other acceptable medical source," who provides "medical treatment or evaluation" to a claimant as part of an "ongoing treatment relationship." 20 C.F.R. §§ 404.1502 & 416.902. A "nontreating source" is a "physician, psychologist, or other acceptable medical source" who has examined the claimant, but not as part of an ongoing treatment relationship. *Id.*

weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. § 404.1527(c) (Jul. 25, 2012). An ALJ is not required to "slavishly" recite and discuss each factor contained in 20 C.F.R. § 404.1527(c), provided that "the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 Fed. Appx. 67, 70,

2013 WL 628072 at *2 (2d Cir. Feb. 21, 2013).

## DISCUSSION

Plaintiff maintains that the Commissioner's ruling must be reversed for the following reason: "The ALJ committed reversible error by giving 'limited weight' to the opinions of Ms. Tyson's treating [sic] without identifying any substantially conflicting evidence of record or providing the requisite 'good reasons.'" Pl.'s Mem. of Law at 20, Mar. 29, 2016, ECF No. 10-1.

In support of her position, Plaintiff relies for the most part on the opinions of Michael Gavin, M.D., Erin Gerig, MSLMFT, a marriage and family therapist, and Sue Giovanni, M.D.

Dr. Gavin[2] was associated with Culver Medical Group and saw Plaintiff primarily for her complaints of asthma and shoulder pain, although his reports did mention her mental health issues as well. Dr. Gavin completed a Monroe County Department of Human Services Physical Assessment for Determination of Employability dated April 21, 2014. R. 563–66. In the report, Dr. Gavin noted that Plaintiff's chief complaint or history of present illness included "[a]nxiety, [d]epression, bipolar I. Severe [illegible] and episodes of depression and mania. History of suicidal ideation and homicidal ideation." R. 565.

---

[2] Michael J. Gavin, M.D., is currently at Tow Path Family Medicine and specializes in internal medicine and pediatrics. Michael J. Gavin, M.D. - Patient Care Profile - University of Rochester Medical Center, https://www.urmc.rochester.edu/people/23556539-michael-j-gavin (last visited Oct. 25, 2016).

Dr. DiGiovanni[3] co-signed a "Medical Source Statement" report prepared by Ms. Gerig and dated February 13, 2014. R. 469–72. In the report, Plaintiff's diagnosis is listed as follows:

Axis I: 296.89 Bipolar Disorder Type II

Axis II: 799.9 Deferred

Axis III: Asthma, back pain.

R. 469. In that report, the following mental abilities are listed as "unable to meet competitive standards: I. Complete a normal workday and workweek without interruptions from psychologically based symptoms; L. Accept instructions and respond appropriately to criticism from supervisors." R. 470. Ms. Gerig also noted that Plaintiff's bipolar disorder affected "her own safety and the safety of others, when angry or irritable, wanting to lash out at others." R. 471. She concluded that:

> it may be difficult for this patient to get along with co-workers, respond appropriately to criticism, interact with the general public and maintain socially appropriate behavior, as her ability to control her emotions and actions can be / has been in the past limited. Completing a normal work week and managing daily work stress would also likely be affected by the emotional dysregulation, poor impulse control and interpersonal conflict.

R. 471. Finally, the report estimates that Plaintiff would likely be absent from work three or more days per month. R. 472. This Court has previously held that reports prepared by a medical source and signed by a medical source are to be treated as reports of a medical source. *Keith v. Astrue*, 553 F. Supp. 2d 291, 300 (W.D.N.Y. 2008); *accord Santiago v. Barnhart,* 441 F.Supp.2d 620, 628 (S.D.N.Y. 2006).

---

[3] Sue K. DiGiovanni is a psychiatrist currently with the University of Rochester Medical Center. Sue K. DiGiovanni, M.D. - Patient Care Profile - University of Rochester Medical Center, https://www.urmc.rochester.edu/people/23035768-sue-k-digiovanni (last visited Oct. 25, 2016).

Plaintiff points out several places in the Record where the treating sources opinions concerning her mental health were supported by the longitudinal record. Pl.'s Mem. of Law 22, Mar. 29, 2016, ECF No. 10-1. Further, Plaintiff reports that medications to control her mental disorder were changed nine times by her treating sources from July 2012 through September 2013, evidently in an effort to try to control her bipolar disorder. *Id.*

In assessing Plaintiff's treating sources, the ALJ determined that Ms. Gerig's assessment was to be given only limited weight writing that the opinion

> seems to give significant consideration to the claimant's subjectively reported complaints, despite the treatment notes from the therapist and treating nurse practitioner showing improvement with treatment. The suggested limitations are not fully supported by the clinical findings of the treating nurse practitioner, despite the sign-off by the supervising doctor.

R. 30. Plaintiff argues that the ALJ's remark that the notes showed Plaintiff improved is unhelpful, since any improvement she experienced is relative to her condition, and the ALJ does not conclude that her improvement was to the extent of being able to function in the workplace. Pl.'s Mem. 29. The Commissioner also questions the diagnosis of bipolar disorder. Comm'r Mem. of Law 22, May 19, 2016, ECF No. 12-1. Referring to a Psychiatric Consultation Form from St. Joseph's Neighborhood Center, completed on August 9, 2011, the Commissioner notes that Plaintiff reported that she thought "she might be bipolar as moods shift rapidly." R. 327. Plaintiff returned to St. Joseph's on July 7, 2011, and again reported she "may be experiencing bipolar disorder." R. 274. The social worker who prepared the report diagnosed the following:

Axis I: R/O Bipolar II

Axis II: Borderline OD

Axis III: Asthma

Axis IV: Unemployed

Axis V: So

R. 276. The Commissioner notes that "R/O" means "rule out" and is not a diagnosis. Comm'r Mem. 24. On December 20, 2011, Plaintiff was seen at Strong Behavioral Health – Adult Ambulatory Clinic by Ms. Gerig. Plaintiff told Ms. Gerig about being seen at St. Joseph's Neighborhood Center and that she was "dx with Bipolar Disorder and was given prescriptions for Lithium and Hydroxyzine." R. 281. Ms. Gerig's diagnosis after that December 2011 visit was as follows:

Axis I: Code: 296.89 Diagnosis Name: Bipolar II Disorder, Rule Out Schizoaffective D/O.

Axis II: Code: 799.9 Diagnosis Name: Deferred.

Axis III: asthma, chronic back pain.

Axis IV: financial stress.

R. 285.

The Commissioner relates that the next medical source Plaintiff saw after being seen by Ms. Gerig was Susan Santarpia, Ph.D. The ALJ gave the opinion of Susan Santarpia, Ph.D., a consultative examiner, some weight. R. 30. Dr. Santarpia prepared a report on January 4, 2012, after conducting one examination of Plaintiff. R. 286–89. Dr. Santarpia diagnosed the following:

Axis I: Anxiety disorder, NOS.

Axis II: No diagnosis.

Axis III: Asthma.

R. 289. The implication of the Commissioner's argument is that the bipolar diagnosis only


Page 10 of 12

came about by Plaintiff's misrepresentation of the "diagnosis" at St. John's (rule out bipolar). However, this argument does not account for the treating physician's February 2014 diagnosis of bipolar disorder, nor does it address the longitudinal record of treatment.

The ALJ also gave significant weight to a State agency psychological consultant, Dr. Santarpia,[4] who concluded that Plaintiff had "a severe mental impairment, but retains the ability to meet the mental demands of unskilled work with limited social contact (Exs. 6F, 7F)." R. 29.

The Commissioner's regulation states that "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." Here, the ALJ did not give the treating sources' opinions controlling weight. The ALJ's decision did not state that the opinions were not well supported by the longitudinal record of visits with the treating therapist, but by giving greater weight to the consultative examiner, implies that the treating sources' opinions were inconsistent with other substantial evidence in Plaintiff's case record.

The ALJ cites to Plaintiff's child care duties as support for her determination that Plaintiff was capable of performing the activities of daily living unimpeded by her condition. R. 28 ("she reported to the medical consultative examiner that she cooks three times a week, does laundry and cleaning one a week, performs regular personal care, and takes care of children five days a week (Ex. 5F).Thus, despite the claimant's testimony regarding

---

[4] "The ALJ did not rely on Dr. [R.] Altmansberger's opinion to contradict a treating source opinion." Comm'r's Mem. 25.

difficulty getting out of bed, I find only mild limitations in activities of daily living."). However, Plaintiff reported to Ms. Gerig on April 16, 2013, that "she made the decision to stop watching her grandson for the time being because it is causing her too much stress." R. 535. The ALJ asked Plaintiff at the October 2, 2013, hearing about her child watching in 2011, but did not ask her about the cessation of her child care duties in 2013. R. 15.

The only other evidence the ALJ seems to rely on as being inconsistent with the treating sources' opinions is the consultative examiner's opinion that Plaintiff merely suffered from anxiety and asthma. However, the ALJ's decision is not clear on this point and the Court, therefore, determines that the ALJ failed to "give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(c)(2).

**CONCLUSION**

Defendant's motion for judgment on the pleadings is denied; Plaintiff's motion for judgment on the pleadings is granted. The Commissioner's decision is reversed and remanded for a rehearing. The Clerk is directed to close this case.

So Ordered.

Dated: September 7, 2017
Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge